FILED
2017 Feb-07  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **JOHN BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:16-CV-1390-VEH** |
| ) | |
| **STATE FARM FIRE & CASUALTY** ) | |
| **COMPANY and DONALD** ) | |
| **TAYLOR, individually and as agent,** ) | |
| **servant, and/or employee of State** ) | |
| **Farm Fire and Casualty a/k/a** ) | |
| **DONALD TAYLOR AGENCY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff John Brown ("Mr. Brown") initiated this insurance action against

Defendants State Farm Fire & Casualty Company ("State Farm") and Donald

Taylor, a/k/a Donald Taylor Agency (hereinafter, "Mr. Taylor") (together,

"Defendants") in the Circuit Court of Jefferson County on July 20, 2016. (Doc. 1-

2).[1] Mr. Brown's Complaint asserts claims of Negligent Procurement of Insurance,

Breach of Contract, Bad Faith Refusal To Investigate and/or Pay a Valid Claim,

---

[1] All page references to (Doc. __) correspond with the court's CM/ECF numbering
system.

Bad Faith Failure To Pay a Valid Claim, Breach of Contract To Procure Adequate Insurance Coverage, and Negligent Hiring/Supervision. *Id.* On August 24, 2016, State Farm and Mr. Taylor removed Mr. Brown's lawsuit to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332 and in conjunction with the fraudulent joinder of Mr. Taylor. (Doc. 1 at 4, ¶ 8-10). Defendants argue in their notice of removal that Mr. Taylor was fraudulently joined because none of Mr. Brown's claims against him are colorable under Alabama law.

Pending before the court is Mr. Taylor's Motion To Dismiss, which was filed on August 24, 2016. (Doc. 3). As Mr. Brown did not file either a Motion To Remand or a response to Mr. Taylor's Motion To Dismiss, the court ordered Mr. Brown to respond to Mr. Taylor's Motion and to address Defendants' fraudulent joinder arguments on October 24, 2016. (Doc. 12). Mr. Brown filed a Response on November 4, 2016 (doc. 13), and Defendants filed a Reply on November 21, 2016 (doc. 14).[2] The Motion To Dismiss and underlying fraudulent joinder arguments are now ripe for disposition.

For the following reasons, the court finds that Mr. Brown is not able to

---

[2] In their Reply, Defendants requested oral argument. (Doc. 14). However, the court has determined that oral argument is not necessary in this case. Additionally, the court finds that Defendants have had ample opportunity to brief their arguments through their Notice of Removal (doc. 1), Motion To Dismiss (doc. 3), and Reply (doc. 14).

maintain a colorable cause of action against Mr. Taylor. Accordingly, as Mr.
Taylor has been fraudulently joined, there is complete diversity in this case. This
court retains jurisdiction to determine Mr. Taylor's Motion To Dismiss, which is
due to be **GRANTED**.

## II.   FACTUAL ALLEGATIONS[3]

Mr. Brown purchased an insurance policy known as a "Homeowners
Policy" from Defendant State Farm. (Doc. 1-2 at 9, ¶ 6). The policy was issued
effective from August 12, 2014, to August 12, 2015, and insured a single family
dwelling, providing coverage for the dwelling, other structures, personal property,
and loss of use. *Id.* at 9-10, ¶7. The policy was underwritten, marketed, sold, and
issued to Mr. Brown by State Farm, which acted through and/or in conjunction
with Mr. Taylor and his company, Don Taylor Agency. *Id.* ¶8.

Mr. Brown is a citizen of the state of Alabama. *Id.* ¶ 1. State Farm is an
Illinois corporation, with its principal place of business in the state of Illinois, that
is licensed to conduct business within the state of Alabama. *Id.* ¶2; (Doc. 1 at ¶9).
Mr. Taylor is also a citizen of Alabama. (Doc. 1-2 at ¶ 3); (Doc. 1 at ¶ 10).

On October 2, 2014, lightning struck a tree located adjacent to Mr. Brown's

---

[3] As is discussed later in this Opinion, the factual allegations must be viewed in the light
most favorable to the plaintiff, Mr. Brown, as stated in his Complaint. (Doc. 1-2).

home. *Id.* ¶11. The mechanism of the electrical strike and resultant concussion caused damage to the foundation wall of the structure, which allowed water to enter the dwelling and caused significant damage. *Id.* Almost immediately thereafter, and in accordance with the subject policy provisions, Mr. Brown notified State Farm of the damages to and losses sustained on the property. *Id.* at 11, ¶ 14. Mr. Brown was contacted by State Farm through its adjuster, but State Farm did not make any effort to determine the amounts of loss or to make any payment to Mr. Brown. *Id.* at ¶15.

On or about November 21, 2014, Mr. Brown was notified by letter from Amy King, a Fire Claim Representative with State Farm, that the insurance policy did not cover the loss because the lightning strike did not result in the damages to the home. *Id.* at ¶16. State Farm denied Mr. Brown's claim in its entirety. *Id.* Mr. Brown claims that he has expended large sums for the work necessary to determine the cause of the damage, he has undertaken temporary repairs in order to mitigate the damage, and he has lost the use and value of his property. *Id.* at ¶18.

## II.   STANDARD

### A.   <u>Diversity Jurisdiction</u>

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction.

They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941)).

State Farm and Mr. Taylor premise their removal upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed

amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

Complete diversity requires that every "plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Mr. Brown's state court complaint makes an unspecified demand for damages, so the removing Defendants bear the burden of demonstrating that the amount in controversy requirement has been met. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1060 (11th Cir. 2010). By alleging that they filed their notice of removal within thirty days of service of the complaint by Mr. Brown, Defendants have invoked Section 1446(b)'s first and less demanding removal mechanism. *See* 28 U.S.C. § 1446(b)(1).[4] A defendant's notice of removal pursuant to Section 1446(b)(1) "need include only

---

[4] 28 U.S.C. § 1446(b)(1) states as follows: "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by §1146(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014).

As another district court in this Circuit has recently stated,

> Where the plaintiff does not plead a specified amount of damages in the complaint, a defendant's notice of removal need include only a "plausible allegation" that the amount in controversy meets the jurisdictional threshold. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) . . . [i]n assessing whether removal is proper, the court must first look to the complaint. *Pretka*, 608 F.3d at 754. If a defendant alleges that federal jurisdiction is "facially apparent" from the complaint, the court must evaluate whether the "complaint itself satisfies the defendant's jurisdictional burden." *Roe*, 613 F.3d at 1061. The law permits a district court to make "'reasonable deductions, reasonable inferences, and other reasonable extrapolations'" to determine whether federal jurisdiction exits from the face of the complaint. *Id.* at 1061-62 (quoting *Pretka*, 608 F.3d at 754). "A district court need not 'suspend reality or shelve common sense in determining whether the face of the complaint . . . establishes the jurisdictional amount.'. . .  Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe*, 613 F.3d at 1062 (citations omitted).

*Johnson v. Blackburn*, No. 2:16-CV-989, 2016 WL 5816114, at *1 (N.D. Ala. Oct. 5, 2016) (Bowdre, J.) (analyzing the amount in controversy requirement in a notice of removal made within the 30-day period in Section 1446(b)(1)).

In their Notice of Removal, Defendants point to the policy of insurance at the basis of this suit, which has dwelling coverage limits of $270,300, coverage limits of $27,030 for other structures, and personal property coverage limits of $202,725. (Doc. 1 at 17-18, ¶ 24). Defendants also point to Mr. Brown's allegations in the complaint that he had to "expend[] large sums" to determine the cause of the damage and repair the damage; that he has suffered, and continues to suffer, loss of value and damages to his home and other property; and that the loss of the full use and enjoyment of his home has resulted in "emotional and mental distress." *Id.* (citing (Doc. 1-2) at ¶¶ 18, 36, 43). Mr. Brown also seeks punitive damages in Counts I-VI of the Complaint. Mr. Brown has not challenged the Defendants' assessment of the amount in controversy. The court finds that Defendants have satisfied their burden of demonstrating that the amount in controversy meets the jurisdictional threshold.

## B.   <u>Fraudulent Joinder Principles</u>

The dispute over satisfaction of the citizenship requirement in this case has to do with whether Mr. Brown has fraudulently joined Mr. Taylor as a defendant in the case. "[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal

as a party and its citizenship is disregarded for diversity requirement purposes. *See id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when a non-diverse defendant has allegedly been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There, the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a "heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[5]

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to determine how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final

---

[5]  Under the second prong of the fraudulent joinder test, the court must determine whether the plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction.  No issue related to the second prong exists in this case.  Accordingly, the court limits its analysis to the first inquiry.

determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).[6] The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one[,]" *see Crowe*, 113 F.3d at 1538 (internal quotation marks omitted) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)), requiring clear and convincing evidence and particularity in pleading. *Parks*, 308 F.2d at 478 (citing Barron and Holtzoff, *Federal Practice and Procedure*, § 103, p. 478). The court in *Crowe* explained the framework for analyzing fraudulent joinder as follows:

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," [*B., Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry "must not subsume substantive determination." *Id.* at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on

---

[6] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

the merits." *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id*. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also*

*Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there

is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was

proper and remand the case to the state court."). As long as a plaintiff's claim against

a non-diverse defendant is "colorable," fraudulent joinder does not apply and the

action is due to be remanded. *Pacheco de Perez*, 139 F.3d at 1380.

When considering a fraudulent joinder claim, federal courts use state rather

11

than federal pleading standards. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011) ("We must necessarily look to the pleading standard applicable in state court, not the plausibility standard prevailing in federal court."); *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("[T]he decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands.").

While the federal plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully," the standard for a fraudulent joinder claim under Alabama law is a notice pleading standard. *Stillwell*, 663 F.3d at 1333; *Thomas v. Williams*, 21 So. 3d 1234, 1236, 1236 n.1 (Ala. Civ. App. 2008) (declining to apply the *Twombly* standard because "we have notice pleading under Alabama's Rules of Civil Procedure"); ALA. R. CIV. P. 8, Committee Comments ("the prime purpose of pleadings is to give notice").

The standard is met if the "claim for relief gives to the opponent fair notice of the pleader's claim and the grounds upon which it rests," and the complaint cannot be dismissed it if contains "even a generalized statement of facts which will support a claim for relief." *McKelvin v. Smith*, 85 So. 3d 386, 389 (Ala. Civ. App. 2010)

(internal citations omitted). When applying the standard, factual allegations must be viewed in the light most favorable to the plaintiff, and any uncertainties about the applicable law must be resolved in the plaintiff's favor. *Crowe*, 113 F.3d at 1538. Fraudulent joinder must fail if even one claim could possibly state a valid cause of action against even one defendant. *Stillwell*, 663 F.3d at 1332-33.

## III.   ANALYSIS

Mr. Brown's Complaint asserts claims against Mr. Taylor for Negligent Procurement of Insurance (Count I) and Breach of Contract To Procure Insurance (Count V).

### C.   Mr. Brown's Negligent Procurement of Insurance Claim

In Count One, Mr. Brown has asserted a negligent procurement of insurance claim against Mr. Taylor. (Doc. 1-2 at 12-15, ¶¶ 21-31). Under Alabama law, a "claim in tort alleging negligent failure of an insurance agent to fulfill a voluntary undertaking to procure insurance . . . requires demonstration of the classic elements of negligence, *i.e.*, '(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury.'" *Kanellis v. Pac. Indem. Co.*, 917 So. 2d 149, 155 (Ala. Civ. App. 2005) (citing *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). Once an insurance agent "undertakes to procure insurance for a client," the agent owes a duty "to exercise reasonable skill, care and diligence in effecting" the coverage. *Highlands Underwriters Ins. Co. v.*

*Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978) (applying the elements of a negligent procurement of insurance claim).

However, contributory negligence is a complete defense to a negligence claim under Alabama law. *Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1248 (Ala. 2014) (citing *Mitchell v. Torrence Cablevision USA, Inc.*, 806 So. 2d 1254, 1257 (Ala. Civ. App. 2000)). Applying Alabama's strict contributory negligence standard to procurement claims, the Alabama Supreme Court held that "negligent-procurement claim[s] [are] barred by the doctrine of contributory negligence" and judgment as a matter of law in favor of an agent is required "when documents available to the insured clearly indicate that the insurance in fact procured for the insured is not what the insured subsequently claims he or she requested the agent to procure." *Alfa*, 159 So. 3d at 1253, 1255; *see id.* at 1252 ("By not reading the documents, they took a risk and put themselves in danger's way. We do not think it unreasonable to conclude as a matter of law that, in this day and age, any adult of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract.").

While Mr. Brown's response acknowledges that Defendants have raised a contributory negligence defense, he has in no way attempted to distinguish *Alfa* from

its applicability in this case. Instead, Mr. Brown relies on *Am. Furniture Galleries, Inc. v. McWane, Inc.*, 477 So. 2d 369, 372-73 (Ala. 1985) to support the validity of his negligent procurement claim. However, *American Furniture* did not concern an insurance dispute and involved neither an insurance agent nor a negligent procurement of insurance claim. As the Alabama Supreme Court directly addressed negligent procurement of insurance claims brought against insurance agents in *Alfa*, a case more recent than *American Furniture* and more directly on point, the court finds that *Alfa* is binding on this action.

The Alabama Supreme Court's holding in *Alfa* is limited to negligent procurement of insurance claims and does not expressly extend to breach of contract to procure insurance claims.[7] Applying *Alfa* to the facts of this case, the court notes that Mr. Brown admits the insurance policy was in full force and effect at all times relevant to this action, so he had a duty to read the documents available to him. (Doc.

---

[7] The court in *Alfa* did note, however, that "it would seem more unreasonable to allow plaintiffs to prevail on negligent-procurement claims in spite of their failure to read documents that put them on notice of the extent of their insurance coverage when that same failure to read already bars a fraud or breach-of-contract claim based on the same essential facts." *Id.* at 1252 n. 9. However, the breach of contract case cited by the court in *Alfa* concerned a breach of contract claim against an insurer and did not address a breach of contract to procure insurance claim brought against an agent. *See Nance v. Sutherland*, 79 So. 3d 612, 620 (Ala. Civ. App. 2010) (finding that the insureds waived their argument that the insurance agent both owed and breached a duty to advise them of the scope of coverage).

15

1-2 at 10, ¶7).[8] Therefore, as a matter of law, Mr. Brown cannot recover against Mr. Taylor as to this claim. Mr. Brown's Negligent Procurement claim against Mr. Taylor is due to be **DISMISSED**.

### B.      Mr. Brown's Breach of Contract To Procure Insurance Claim

In Count Five, Mr. Brown has asserted a breach of contract to procure insurance claim against Mr. Taylor. (Doc. 1-2 at 23-25, ¶¶ 49-53). Mr. Taylor urges the court to dismiss this claim because (1) he alleges that Mr. Brown's breach of contract to procure insurance and negligent procurement of insurance claims are mutually exclusive actions, and (2) he argues that Mr. Brown's breach of contract to procure insurance claim is defeated by his pending breach of contract and bad faith claims against State Farm. (Doc. 3 at 9-11).

Mr. Brown failed to respond to Mr. Taylor's Motion To Dismiss on his own initiative, and only after the Court's (doc. 12) Order did he file a Response. His Response, however, only addresses the negligent procurement of insurance claim and fails to present any argument whatsoever as to why he believes he has sufficiently

---

[8]  Mr. Brown also briefly alleges that Mr. Taylor had a "duty of continued monitoring" of the insurance coverage to "ensure that Plaintiff's insurance would adequately protect the subject dwelling and related property relative to Plaintiff's particular needs." *Id.* at 13, ¶ 26. This is a legal argument, and Mr. Brown provides no factual allegations, even cursorily, to support his claim. He also cites to no Alabama case law recognizing that an agent has a duty of continued monitoring. Regardless, this claim is also barred by Mr. Brown's contributory negligence, which is a complete defense to his negligence claim in this case.

established a breach of contract to procure insurance claim. However, due to the impact that this claim has on the court's fraudulent joinder analysis, the court will analyze Mr. Brown's Breach of Contract To Procure Insurance claim as if he had argued in favor of its validity in his Response.

Once parties have come to an agreement on the procurement of insurance, an agent must exercise "reasonable skill, care, and diligence in effecting coverage." *Timmerman Ins. Agency v. Miller*, 285 Ala. 82, 85 (1969). Under Alabama law, "when an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom." *Id*. When the agent fails in the fiduciary duties he assumes, he can be sued either for breach of contract or in tort. *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978).

Mr. Taylor first argues that negligent procurement claims brought under tort and contract law are mutually exclusive. Mr. Taylor cites to *First Ala. Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1068 (11th Cir. 1990) (applying Alabama law)[9] for his proposition that a party may only be liable in contract

---

[9] Mr. Taylor also references *Blumberg v. Touche Ross & Co.*, 514 So. 2d 922, 925 (Ala. 1987) to support his argument that these two types of claims are mutually exclusive. However, this case found that accountant liability may arise in either contract or in tort and is not directly

if he or she breaches an express promise to use care. However, *First Alabama* merely held that an agent or broker *can* assume additional contractual duties by express agreement, not that a party may only sue under contract law *when* an express promise has been made. *Id.* at 1068; *see also id.* at 1067 ("Alabama law holds that when one contracts with another and expressly promises to use due care or to do an act, he is liable in both tort and contract when his negligence injures the other party.").

Therefore, Mr. Brown is not barred from bringing a breach of contract to procure insurance claim merely because he has also brought a negligent procurement of insurance claim against Mr. Taylor. Further, because Mr. Brown's negligent procurement of insurance tort claim fails as a matter of law, the court does not need to determine whether these two specific claims are mutually exclusive.

Second, Mr. Taylor argues that Mr. Brown's breach of contract to procure adequate insurance claim is defeated by his pending breach of contract and bad faith claims. The court agrees that, by alleging breach of contract and other contract-based claims against State Farm, Mr. Brown concedes that insurance was in fact procured. This is not a situation where Mr. Taylor altogether failed to procure any insurance for Mr. Brown, nor is it the case that, upon failing to procure that insurance, Mr. Taylor negligently neglected to notify Mr. Brown of his inability to procure coverage. Mr.

---

relevant in this insurance case.

Brown admits that there was a policy in full force and effect. (Doc. 1-2) at 10, ¶7. Rather, Mr. Brown argues, like in his negligent procurement claim, that Mr. Taylor breached an agreement between them by procuring insurance that was not *adequate* because it did not cover all types of losses that he requested.

Under Alabama law, "[i]t is the rule that if the policy is accepted by the insured, he is bound thereby even though the policy does not correspond to the preliminary negotiations. The oral negotiations for the policy are merged into the accepted policy." *Langley v. Mut. Fire, Marine & Inland Ins. Co.*, 512 So. 2d 752, 766 (Ala. 1987) (citing *Smith v. Protective Life Ins. Co., Inc.*, 355 So. 2d 728, 730 (Ala. Civ. App. 1978)) (applying the merger doctrine to a breach of contract to procure insurance claim), *overruled on other grounds by Hickox v. Stover*, 551 So. 2d 259 (Ala. 1989). The principle of the merger doctrine is "well embedded in our law." *Langley*, 512 So. 2d at 766. "It is familiar law that a contract of insurance is essentially like all other contracts, and governed by general rules of contract . . . all parol negotiations, understandings, and agreements are merged into the written policy." *Farmers & Merchants Bank v. Home Ins. Co.*, 514 So. 2d 825, 831 (Ala. 1987) (citing *Hartford Fire Ins. Co. v. Shapiro*, 270 Ala. 149, 153-55 (Ala. 1960)).

The merger doctrine has been applied to breach of contract to procure insurance claims by the Alabama Supreme Court. *Langley*, 512 So. 2d at 766. As a

district court within this Circuit has summarized,

> [D]ecisions issued by the Alabama Supreme Court and by the Court of
> Appeals for the Eleventh Circuit applying Alabama law have
> consistently applied the merger doctrine. *See, e.g., Sexton v. Liberty Nat.
> Life Ins. Co.*, 405 So. 2d 18, 22 (Ala. 1981) ("It is the rule that if the
> policy is accepted by the insured, he is bound thereby even though the
> policy does not correspond to the preliminary negotiations. The oral
> negotiations for the policy are merged in the accepted policy. . . . This
> principle is well embodied in our law.") (quoting *Smith v. Protective
> Life Ins. Co.*, 355 So. 2d 728, 730 (Ala. Civ. App. 1978)) (relying on
> *Hartford Fire*) (other citations omitted); *Farmers & Merchants Bank v.
> Home Ins. Co.*, 514 So. 2d 825, 830–31 (Ala. 1987) ("Here, however,
> the written policy of insurance was issued subsequent to the agent's
> allegedly making oral representations that were contrary to the
> provisions of the written insurance contract. The instant facts, therefore,
> do invoke the application of the doctrine of merger, thereby precluding
> any consideration of the alleged prior representations of [the insurance
> agent] as to coverage.") (relying on *Hartford Fire*); *Langley v. Mut.
> Fire, Marine, and Inland Ins. Co.*, 512 So. 2d 752, 766 (Ala.1987)
> (same) (overruled on other grounds); *First Ala. Bank of Montgomery
> N.A., v. First State Ins. Co.*, 899 F.2d 1045, 1069–70 (11th Cir. 1990)
> (applying Alabama law) (same).

*Concrete Metal Forms, Inc. v. Cole-Farley & Associates, Inc.*, 2000 WL 1848162,

at *5 (S.D. Ala. Dec. 6, 2000).

However, an insurance broker or agent can assume additional duties by

express agreement. *First Alabama*, 899 F.2d at 1068-69. Whether an agent or broker

"assumes additional responsibilities depends on the relationship between the parties."

*Id.* at 1068. In *First Alabama*, the broker assumed additional express duties after

giving an oral presentation and submitting a written proposal in order to become the

insured's *exclusive* insurance broker. *Id.* The Eleventh Circuit held that the merger doctrine did not bar the insured's breach of contract claim against the broker because "this was not *merely* a contract to procure insurance. [The broker] agreed to 'provide the expertise necessary to meet [the insured]'s needs'" by shopping the market and making the insured aware of all alternatives. *Id.* at 1068-9 (emphasis added).

In his Complaint, Mr. Brown claims he intended that any loss caused by lightning or other peril would be covered. (Doc. 1-2 at 10, ¶ 10).[10] He alleges that Mr. Taylor agreed to "exercise reasonable skill, care, and diligence in effecting the coverage needed by plaintiff" and "breached said contract to procure adequate insurance coverage as was evidenced by Defendant State Farm's failure to pay for any damages caused by lightning." *Id.* at 23, ¶ 50 and 24, ¶ 52. Mr. Brown has not alleged, however, that Mr. Taylor assumed or undertook *any* additional duties beyond obtaining the policy that was in fact procured. Unlike in *First Alabama*, where the insurer held himself out to be the insured's exclusive insurance broker, this case *merely* involves a breach of contract to procure insurance claim, which is barred by

---

[10] Mr. Brown's Complaint seeks damages for the loss he suffered when lightning struck a tree next to his home, causing damages to his foundation wall and allowing water to enter the dwelling and cause further significant damage. (Doc. 1-2 at 10, ¶ 11). However, he alleges in Count Five that, as a direct result of a material breach of duty by Mr. Taylor, he has "suffered damages, including damage to his home and other property as a result of the *burglary*." *Id.* at 24, ¶ 53 (emphasis added). Mr. Brown has not pled any factual allegations of burglary, and the entirety of the complaint concerns whether loss resulting from a lightning strike should be covered, so the court can only assume that this allegation was made in error.

Alabama's merger doctrine.

Even under Alabama's notice pleading standards, there is no possibility that an Alabama state court could find, based on the Complaint, that Mr. Taylor has sufficiently pled this claim. Accordingly, Mr. Brown's Breach of Contract to Procure Insurance Claim against Mr. Taylor (Count V) is due to be **DISMISSED**.

### C. Mr. Brown's Remaining Claims

Mr. Brown has also asserted claims against State Farm for Breach of Contract (Count II); Bad Faith Refusal To Investigate And/Or Pay a Valid Claim (Counts III and IV); and Negligent Hiring, Training, Monitoring, and Supervision of Licensed Insurance Agents (Count VI).

The language of Counts II, III, IV, and VI is slightly ambiguous as to whether Mr. Brown intended to assert these claims against State Farm, fictitious defendants, *and* Mr. Taylor, or only against State Farm and fictitious defendants.[11] Likely out of an abundance of caution, Mr. Taylor's Motion To Dismiss also argues that these three claims can not be maintained against him, to the extent that Mr. Brown intended to do so. Like the breach of contract to procure insurance claim, Mr. Brown did not

---

[11]  *Cf.* (Doc. 1-2) at ¶ 35 ("Defendant, State Farm and/or fictitious Defendants described herein, breached the contract with the Plaintiff.") *with id.* at ¶ 34 (alleging that all premium payments were made other than those which were waived or otherwise discharged "as a result of the Defendant State Farm, and/or fictitious defendants and/or Defendant Donald Taylor and/or Don Taylor's Agency's and/or fictitious defendants material breach as alleged herein").

address his claims in Counts II, III, IV, and VI in his Response and failed to clarify whether he intended to pursue these four claims against Mr. Taylor as well as State Farm.

Regardless, Mr. Brown has not asserted a viable claim for Breach of Contract or Bad Faith against Mr. Taylor. Under Alabama law, claims for breach of contract and bad faith based on an insurance contract may only be brought against a party to that contract. *Ligon Furniture Co. v. O.M. Hughes Ins., Inc.*, 551 So. 2d 283, 285 (Ala. 1989). The complaint does not allege that Mr. Taylor was a party to the insurance contract. In fact, as Mr. Taylor points out, Mr. Brown readily admits that the insurance contract was issued by State Farm to Mr. Brown. (Doc. 1-2 at 26, ¶33) ("A policy of insurance existed between the Plaintiff and the Defendant, State Farm and/or fictitious defendants described therein . . . ."). Therefore, there is no possibility that Mr. Brown can prove either of these claims against Mr. Taylor.

Additionally, to the extent that Count VI is alleged against Mr. Taylor, Mr. Brown also cannot prevail on his negligent hiring and supervision claim as to Mr. Taylor. A negligent hiring and supervision claim may only be maintained against an employer, *see Ledbetter v. United Am. Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993), and the Complaint makes clear that Taylor acts as an agent or employee, rather than an employer. *See* (Doc. 1-2 at 19, ¶ 55) ("It is alleged that Defendant State Farm

23

negligently hired, supervised, monitored, trained and retained its agents and/or employees, including Defendant Donald Taylor."). As the Complaint does not allege that Mr. Taylor was an employer, Mr. Taylor is not a proper defendant for Mr. Brown's negligent hiring, training, monitoring, and supervision claim.

## IV.   CONCLUSION

For all of the foregoing reasons, there is no possibility that Mr. Brown can state a viable claim under Alabama law against Mr. Taylor. Therefore, Mr. Taylor was fraudulently joined, and his citizenship is disregarded for purposes of evaluating diversity jurisdiction. Because complete diversity exists between Mr. Brown and State Farm, and as the amount in controversy requirement has been met, this court retains jurisdiction over this action.

Mr. Taylor's Motion To Dismiss (doc. 3) is hereby **GRANTED**, and all claims against Mr. Taylor are hereby **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is hereby **DIRECTED** to terminate Mr. Taylor as a party defendant.

**DONE** and **ORDERED** this the 7th day of February, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

24