**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:16-CV-1390-VEH** |
| ) | |
| **STATE FARM FIRE & CASUALTY** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is State Farm Fire & Casualty Company's ("State Farm")

Motion for Summary Judgment against Plaintiff John Brown's ("Mr. Brown") breach

of contract claim. (Doc. 32). Also before the Court is State Farm's Motion To Strike.

(Doc. 50). The parties have completed briefing these motions, and they are ripe for

review. (Docs. 48, 49, 55, 56). State Farm has requested oral argument, but the Court

is able to decide these motions on the briefs, and the request is **DENIED**. For the

reasons stated in this opinion, the motions are due to be **GRANTED** in part and

otherwise **DENIED**.

### II.    STATEMENT OF FACTS

Mr. Brown and his wife, Virginia Brown (the "Browns"), have continuously

lived in their home for approximately twelve years. Mr. Brown's home has a concrete block foundation in the basement, with wood paneling covering it. On October 2, 2014, lightning struck a tree owned by Mr. Brown's neighbor—the tree was seventeen feet and six inches from Mr. Brown's home. At the time of the October 2nd storm (the "First Storm"), John Brown's home was insured by State Farm under Homeowner's Policy Number 01-GR-9065-23 (the "Policy"). Approximately one week after the First Storm, another rain storm (the "Second Storm") produced approximately one and one-half inches of rain. Approximately three days after the Second Storm, Mr. Brown found water leaking from under a closet in the basement. Approximately one and one-half to two weeks after the First Storm (and thus about one-half week to one week after the Second Storm), Mr. Brown examined the closet and found that the weight of his wife's clothing had pulled the closet away from the wall.[1] Mr. Brown then pulled the paneling away from the wall and discovered that the concrete block foundation had begun to collapse.

Mr. Brown contacted his State Farm Agent to report the concrete block falling into the basement, and the loss was reported to State Farm on Mr. Brown's behalf. On October 22, 2014, State Farm received notice of Mr. Brown's claim, and Claims

---

[1] In the light most favorable to Mr. Brown, the wall was not in visible distress before the First Storm or the Second Storm. (*See* Doc. 48 at 6); (Smith Depo. at 67-68).

Representative Amy King contacted Mr. Brown to set up an appointment for his inspection. During the phone call with Ms. King, Mr. Brown stated that the damage to his home was caused by lightning (during the First Storm) that struck a neighbor's tree, followed the roots of the tree, and hit the side of his house, resulting in damage to the brick and an interior wall.

On October 27, 2014, Ms. King inspected Mr. Brown's home with Mr. Brown and a trainer, Mike Milner, present. After the inspection, Ms. King explained to Mr. Brown that a structural engineer was needed to inspect the home to determine the cause of the damage. State Farm retained Hal Cain, an Alabama-licensed structural engineer from Cain & Associates, to determine cause of the damage to Mr. Brown's home.

Mr. Cain indicated that the damage to the home was caused by external soil forces – hydrostatic pressure – and that lightning to the tree did not have any effect on the wall. Mr. Cain cites Mr. Brown's statement that there was one inch of water in his basement in the expert report. (Doc. 32-4 at 22-23). Mr. Cain also reported that "[a]n exterior basement wall should be designed to resist the outside forces produced by the soil and water," but Mr. Brown's concrete foundation wall lacked concrete or reinforcing steel inside of the blocks.

Based on State Farm's investigation and Mr. Cain's report, State Farm sent a

denial letter to Mr. Brown on November 21, 2014, explaining that the loss was not covered by the Policy.

Following the denial, Mr. Brown hired his own structural engineer, David Carlysle, to inspect his home. Mr. Carlysle concluded, in his original report, that "[g]iven the recent work in the right portion of the basement, the significant distress that has developed in the right foundation wall since the wall was covered by 2 x 4s and paneling, and the timing of the lightning strike, we find it likely that the wall has been damaged by the lightning strike." Mr. Carlysle's report states that "[i]t is our opinion that the lightning itself did not damage the house, but the shock wave from the lightning strike caused damage to the foundation wall." (Doc. 32-10 at 84). Mr. Carlysle's original report stated that the "shock wave from the strike can be similar to that created by a blast." Mr. Carlysle did not find evidence of blasting or impact on the foundational wall. Mr. Carlysle contended that the foundation wall was built 35 years prior, when non-reinforced hollow concrete block foundation walls were the accepted method of construction. In spite of water leaking into Mr. Cain's basement, Mr. Carlysle also contended, based on a review of weather data, that the soil was not saturated.

State Farm submitted Mr. Carlysle's report to Mr. Cain for review. Mr. Cain drafted a supplemental report, where he noted that Mr. Carlysle failed to provide

scientific proof to otherwise prove that the lightning strike caused the foundation wall to fail. Citing the lack of "of evidence of lightning damage near the bottom of the tree," lack of broken windows, lack of roof damage, and lack of damage to neighboring homes, Mr. Cain posits that "[t]here was no evidence of shock wave damage anywhere." (Doc. 32-4 at 112-13).[2] He reiterated that the foundation wall was not properly designed and noted that just because non-reinforced concrete walls were an accepted design does not mean the walls are now structurally sound. Mr. Cain also pointed out that he observed the lightning-struck tree during his inspection, whereas Mr. Carlysle did not see the lightning-struck tree (the tree had been removed prior to Mr. Carlyle's investigation). Based on Mr. Brown's own statement about the depth of the water on the basement flooring and amount of water he personally removed, Mr. Cain's supplemental report also reiterated that the rainfall was higher than stated in the weather data relied on by Mr. Carlysle.. Based on Mr. Cain's supplemental report and the Policy language, State Farm maintained its denial and sent a letter indicating that to Mr. Brown.

After this lawsuit was filed, Mr. Brown disclosed Mr. Carlysle as an expert. Mr. Carlysle submitted revised reports and was deposed. During his deposition, Mr.

---

[2] Mr. Brown responds by noting that a kitchen dish was broken, pictures "blew off the wall," and that he had issues with electric appliances afterwards. (*See* Doc. 48 at 5); (John Brown Depo. at 141-42, 262-63).

Carlysle expressed his opinion that the lightning strike caused damage to Mr. Brown's underground foundation because it caused the ground to shake. Mr. Carlysle reiterated that "the sudden movement of the right foundation wall was caused by seismic ground movement created by the pressure wave/thunder from the lightning strike approximately seventeen feet six inches from the right front corner of the house." Mr. Carlysle opined that thunder created seismic movement in the soil. Mr. Carlysle's opinion is that the pressure wave, or seismic movement, ultimately caused the ground to move.[3] He testified that it is his opinion that lightning caused the thunder, which caused the movement of the soil, which caused the foundational wall to fail.

The Policy expressly excludes damages from earth movement, regardless of the cause:

### SECTION I – LOSSES NOT INSURED

* * *

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or

---

[3] Mr. Brown argues that there is no slope up against the wall that failed. (*See* Doc. 48 at 5); (Doc. 32-10 at 37-38) (photographs of the home). Mr. Carlysle's report indicates that there was "a slight slope toward the corner of the house." (Doc. 32-10 at 84).

occurs as a result of any combination of these:

* * *

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement, resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava low, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action**.

Since the denial of Mr. Brown's claim, Mr. Brown testified there has been further damage to all of the flooring in his basement. Water comes in the basement when it rains, and black mold has begun to accumulate in Mr. Brown's basement underneath the flooring. Despite the damage in their basement, Mr. Brown and his wife continue to live in their home, have never moved out, and continue to have friends over to their home. Mr. Brown understands that the Policy does not cover earth movement, water damage resulting from earth movement, or mold.

## III. STANDARDS

### A. Motion To Strike

It has long been the law in this circuit that, when deciding a motion for summary judgment, a district court may not consider evidence which could not be reduced to an admissible form at trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1323

(11th Cir. 1999). But, until 2010, Rule 56 lacked a formal procedure to challenge such inadmissible evidence. In 2010, the advisory committee added Rule 56(c)(2), which provides:

> A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Fed. R. Civ. P. 56(c)(2).

### B.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, Depo.s, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions,

answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an

affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## IV.  ANALYSIS

### A.     The Motion To Strike Is Due To Be Granted in Part and Otherwise Denied

State Farm moves to strike "the testimony of Mr. Brown and his contractors" regarding the issue of causation. (*See* Doc. 50 at 2). State Farm argues that this testimony is expert testimony and specifically objects to testimony recited on pages 15-16, 19-20, 26, and 29 of Brown's brief. (*See id.* at 3-5). According to State Farm:

> The testimony that Brown cites of an expert nature and intended to prove causation includes:
>
> •     Vinsant testified he has personally seen numerous instances of lightning damaged homes and that when lightning is involved "you can just throw the book out." [Doc. 48] at 15.
>
> •     Vinsant personally inspected Brown"s property . . . [which] contained no slope adjacent to the collapsed foundation wall characteristic of other foundation walls he has personally observed that were later determined to have failed due to saturated soil and/or hydrostatic pressure. *Id.*
>
> •     Mr. Sartain saw evidence that lightning traveled down the tree to the ground and disturbed the soil between the tree and house. *Id.*
>
> •     Mr. Smith testified that . . . approximately 30-days prior to the event . . . the wall contained no cracks, bulges, failures or other damage. *Id.*
>
> •     Mr. Bento testified . . . "[you can] rule out groundwater . . . . I don't think anything but the lightning could have done it, personal opinion." *Id.* at 14.
>
> •     Mr. Bento . . . observed [that] . . . "lightning caused the damage to

Mr. Brown's home" . . . and he categorizes the wall as "collapsed." *Id.* at 14.

Plaintiff's Response brief also points to the contractors' testimony to demonstrate that the wall was properly constructed (in an effort to show earth movement did not cause the damage). *Id.* at 20. It further cites Mr. Brown as the source for his contention that State Farm's expert's opinion was improper, including speculations regarding Mr. Cain's calculations and a theory that lightning hitting the house caused the damage. *Id.* at 12, 18.

(Doc. 56 at 2-3) (internal footnote and emphasis omitted). State Farm goes on to point out that Mr. Brown did not disclose himself and his contractors as expert witnesses and that they are unqualified as such.[4] (*See id.* at 5-7).

In response, Brown argues that "[t]he witnesses are not testifying as to the cause of damage," just what they observed. (*See* Doc. 55 at 3) (emphasis omitted). Brown argues that this is just lay witness testimony used for the purpose of disputing the expert testimony and exposing that testimony for not considering important facts. (*See id.* at 3-5).

Since Brown admits that he is only offering these witnesses as lay witnesses, not experts, the Court is just left to determine whether their testimony is appropriate for lay witnesses. (*See* Doc. 55 at 5). Accordingly, "their testimony is generally admissible only as it involves their first-hand knowledge of the collapse and their

_____

[4] The Court notes that State Farm made it clear that this motion is not supposed to be a *Daubert* motion; nevertheless, State Farm goes on to argue that Mr. Brown and his contractors are not qualified as experts under Rule 702. (*See* Doc. 50 at 2 n.1); (*but see id.* at 6-7).

actual observations of the damage." *Nix v. State Farm Fire & Cas. Ins. Co.*, No. 2:10-CV-00303-LSC, 2011 WL 13182998, *6 (N.D. Ala. Mar. 8, 2011) (citing FED. R. EVID. 701). To the extent that State Farm moves to these strike witnesses' statements regarding their observations and first-hand knowledge, the Court **DENIES** the motion. *See* FED. R. EVID. 701.

However, the testimony of Mr. Bento, set out above, clearly states his opinion on causation. For that reason, the Court must determine if causation is something that only an expert can testify about. It concludes that only expert testimony is permitted.

State Farm argues that "testimony regarding the cause of damages to a home is not properly admitted as lay opinion testimony." (Doc. 50 at 3) (citing *Nix v. State Farm Fire & Cas. Co.*, 444 F. App'x 388, 390 (11th Cir. 2011); *Ware v. Nationwide Ins. Co.*, No. 7:11-CV-4272-LSC, 2013 WL 1680514, *4 (N.D. Ala. Apr. 12, 2013); *Johnson v. State Farm Fire & Cas. Co.*, No. CIV.A. 12-00534-N, 2013 WL 4607548, *12 (S.D. Ala. Aug. 29, 2013); *McPherson v. Allstate Indemnity Co.*, No. 3:11cv638-WHA, 2012 WL 1448049, *8 (M.D. Ala. Apr. 26, 2012)). In *Nix*, "[t]he district court ruled that the Nixes failed to contradict the expert testimony introduced by State Farm that the damage was attributable to defects in the construction of the house." *Nix*, 444 F. App'x at 389. The Eleventh Circuit affirmed. *Id.* In that case, State Farm introduced an expert witness whose testimony supported excluding coverage. *See id.* at 390. To

respond to State Farm's witness, Nix used his own testimony, and the testimony of "a contractor who made temporary repairs to the wall." *See id.* Their theory was that "the main line water pipe burst and caused the retaining wall to collapse." *Id.* However, "[n]either Nix nor the contractor witnessed the wall collapse or had personal knowledge about the construction of the Nixes' home." *Id.* Accordingly, their testimony was not admissible lay testimony as to causation. *Id.*

Other district courts have come to similar conclusions. In *Ware*, the court noted that "[w]hile a lay witness may be able to recognize and testify about whether a roof is damaged, such a witness is not capable of reaching an informed conclusion about [causation]." *Ware*, 2013 WL 1680514 at *4. Accordingly, the district court struck what was determined to be expert testimony disclosed too late. *See id.* In *Johnson*, the court noted that after-the-fact lay testimony was insufficient to rebut State Farm's expert testimony. *See Johnson*, 2013 WL 4607548 at *12.

Mr. Brown relies on *Allen v. Turpin*. (Doc. 55 at 4) (citing *Allen v. Turpin*, 533 So.2d 515, 517 (Ala. 1988)). That case states that "opinion testimony of an expert witness is binding upon a jury only when it concerns a subject exclusively within the knowledge of experts and the testimony is uncontroverted." *Allen*, 533 at 517. Mr. Brown then argues that the experts are disputed by the lay testimony. (*See* Doc. 55 at 4-5). The Court previously discussed how causation, in this case, is something within

the realm of expert testimony. Even Mr. Brown admits that he is not proffering these witnesses "to establish the cause of the damage." (*See* Doc. 55 at 4) (emphasis omitted).[5] However, whether or not Mr. Cain's or Mr. Carlysle's opinions are binding on a jury is not at issue here. This motion to strike is about whether Mr. Brown and his contractors are competent to opine on the cause of damage to the home. Mr. Brown's response does not address, much less distinguish, the Eleventh Circuit's decision in *Nix*. (*See generally* Doc. 55).

Guided by the Eleventh Circuit's opinion in *Nix*, the Court finds that lay testimony is inadmissible to establish causation. Accordingly, to the extent Mr. Brown proffers lay testimony that purports to conclude the cause of the damage to the home (the statements of Mr. Bento set out previously), the motion is **GRANTED** and that testimony is stricken.

## B.    The Motion for Summary Judgment Is Due To Be Granted in Part and Otherwise Denied

The only remaining claim in this case is for breach of contract (count two). Here is the relevant law governing these claims:

---

[5] Mr. Brown also cites to two secondary sources and one decision from the Seventh Circuit to support the idea that "[a] witness with unusual experience may be permitted to testify to a lay opinion based on that experience." (Doc. 55 at 6) (citing sources). Mr. Brown then goes on to discuss the qualifications and experience of his contractors. However, the Court is not striking testimony that merely states observations; the Court is striking opinions that invade the province of expert testimony on causation.

"A contract of insurance, like other contracts, is governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (citing *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337 (Ala. 1993)). The material elements necessary to establish a cause of action for "breach of contract" under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

. . .

"Insurance companies are entitled to have their policy contract enforced as written." *Twin City Fire Ins. Co.*, 817 So. 2d at 691 (citing *Gregory v. W. World Ins. Co.*, 481 So. 2d 878 (Ala. 1985)). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Id.* (quoting *Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996)). "If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction." *Id.* at 692 (citing *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226 (Ala. 1997)).

*Nix*, 2011 WL 13182998 at *4-5.

Mr. Brown takes issue with State Farm's discussion of the burden of proof in these sorts of cases. (*See* Doc. 48 at 9). Indeed, there should be some discussion regarding who has the burden to show what. Here is what the district court in *Nix* said regarding the relative burdens:

Plaintiffs have the ultimate burden to establish that their claim is

one that is covered by the terms of the Policy. *Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co.*, 99 So. 787, 790 (Ala. 1924); *McConnell-White-Terry Realty & Ins. Co. v. Fidelity & Deposit Co. of Md.*, 102 So. 617, 619 (1925) ( "[T]he terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms."). If coverage is established and the insurer insists that an exclusion applies, "the insurer bears the burden of proving the applicability of [that] policy exclusion." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (citing *Fleming v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975)). However, the insurer's burden to prove the applicability of an exclusion does not "shift[ ] the general burden of proof from plaintiff to defendant." *Belt Auto. Indem. Ass'n*, 99 So. at 790. "[W]hen the defendant has offered evidence showing prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff." *Id.*

*Nix*, 2011 WL 13182998, *4-5. This language is primarily based on a case from the Supreme Court of Alabama dating back to 1924. Black's Law Dictionary defines prima facie as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." *Prima Facie*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added). Thus, the insurer only has to come up with *some* exclusion – some reason to deny coverage; then it is up to the insured to disprove that exclusion. Of course, *Belt* also stated that a policy exclusion is an "affirmative defense, as to which the onus of allegation and proof is placed upon the defendant." *Belt*, 99 So. at 790. This Court sees a difference between having to show an exclusion applies *prima facie* and having to *prove* the applicability of an exclusion. One interpretation has the

insured disprove the insurer's affirmative defense, and the other has the insurer prove its own affirmative defense.

The Court finds the latter more consistent with Alabama law. *See Standard Life & Acc. Ins. Co. v. Jones*, 94 Ala. 434, 440 (Ala. 1892) ("But this exception to the insurer's liability was also a matter of affirmative defense, and . . . should have been specially pleaded before it could be availed of by the defendant."); *Bankers Fire & Marine Ins. Co. v. Bukacek*, 123 So. 2d 157, 164 (Ala. 1960) ("The burden of alleging and proving that the loss was excepted from the policy coverage was on the insurer.") (citing *Belt*, 99 So. at 787); *Fleming v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975) ("[T]he ultimate burden of proof as to the applicability of the exclusionary clause rests with the movant-insurer."); *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (2001) ("[T]he insurer bears the burden of proving the applicability of any policy exclusion."); *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697 (Ala. 2001) ("[The insurer] has the burden of proof in asserting that a claim is excluded under its policy of insurance.").[6] Other district courts have enumerated a

---

[6] In *St. Paul Fire & Marine Ins. Co.*, the Court stated:

Initially, the parties argue whether Britt carried his burden of establishing that his claim on the policy falls within the parameters of coverage provided by the policy. See 17A Lee R. Russ et al., *Couch on Insurance* § 254:11 (3d ed.) ("Generally speaking, the insured bears the burden of proving all elements of a prima facie case including ... the loss as within policy coverage...."); *Motors Ins. Corp. v. Williams*, 576 So.2d 218, 219 (Ala.1991) (noting that the plaintiff,

similar idea. *See Canal Ins. Co. v. M&G Tank Lines, Inc.*, No. 00-0183-AH-L, 2001 WL 530450, *2 (S.D. Ala. May 10, 2001) ("The insurer bears the burden of proving the applicability of any policy exclusion in litigation with the insured.") (citing sources); *Smith Lake Marina & Resort LLC v. Auto-Owners Ins. Co.*, No. 5:16-cv-01104-AKK, 2017 WL 4167448, *2 (N.D. Ala. Sept. 20, 2017) ("The insured bears the burden of proving coverage . . . but the insurer bears the burden of proving the applicability of an exclusion.").

Here, Mr. Brown has offered evidence that he had a policy with State Farm (Doc. 32-2), he submitted a claim (John Brown Depo. at 120), and State Farm denied that claim (*See id.*). The policy provides broad coverage for losses– limited by the specific exclusions under the policy. The policy states:

### SECTION I - LOSSES INSURED

---

insured under a policy including uninsured-motorist coverage, carried the burden of proving that the tortfeasor was uninsured); and *Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 376, 194 So.2d 532, 535 (1967) (noting that the plaintiff, as beneficiary of the insured's life-insurance policy, carried the burden of proving "that the insured's death resulted from injuries sustained in such manner as to bring him within the coverage of the policy"). However, <u>because all-risk policies generally include coverage for any losses not excluded</u> or resulting from the insured's fraudulent conduct and because we find another issue dispositive of this appeal, we need not address those arguments. For purposes of this decision, <u>we assume, without deciding, that Britt carried his burden of showing that the loss of the sailboat was, absent an exclusion in the policy, covered by the policy.</u>

*St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 810 (Ala. 2016) (emphasis added). That is not dissimilar from the case here.

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

(Doc. 32-2 at 29). Thus, Mr. Brown has met his "prima facie burden on [the] breach of contract claim." *See Smith Lake Marina & Resort LLC*, 2017 WL 4167448, *2. State Farm argues that Mr. Brown has not shown he is within the policy. (*See* Doc. 49 at 3). However, this argument appears to be based on a failure to recognize the broad coverage /all-risk nature of the policy. State Farm has to prove its own affirmative defense, not Mr. Brown. Under the standard enumerated above, State Farm has to prove that one of the exclusions applies because, under Alabama law, the exclusion is an affirmative defense.

### 1. State Farm Cannot Prove the Defective Construction and Water Damage Exclusion at Summary Judgment

State Farm's first argument is that their expert witness, Mr. Cain, shows that "Mr. Brown's loss was cause by external soil forces/hydrostatic pressure and improper construction." (*See* Doc. 32 at 18). According to State Farm, this incident falls under one of the Policy exclusions. (*See id.* at 18-19). Relying on its expert witness, State Farm argues that the incident was not caused by lightning. (*See id.* at 19-20). In support, State Farm relies primarily on *Nix v. State Farm*. (*See id.* at 18-21) (citing *Nix*, 444 F. App'x 388 (affirming "summary judgment in favor of State Farm" when

"uncontroverted evidence establish[ed] that the [plaintiff's] claim was excluded from coverage"). State Farm primarily relies on the water and defective construction exclusions. (*See id.* at 20-21); (*see* Doc. 32-2 at 31) (water pressure exclusion); (*id.* at 9, 235); (water damage exclusion); (*id.* at 235-36) (defective construction exclusion).[7]

In response, Mr. Brown argues that "Cain's opinion is based upon a misunderstood oral conversation between [Mr. Cain and Mr. Brown] that is unsupported by the record." (*See* Doc. 48 at 11). According to Mr. Brown, he told Mr. Cain that there were "water spots" on the floor, and never said that there was about an inch of water covering the floor. (Doc. 48 at 11-12); (*see also* John Brown Depo. at 266-67). Since the underpinning of Mr. Cain's report is partially based on this piece of information, Mr. Brown argues that the report is not credible. (*See id.*). Mr. Brown further argues that "Mr. Cain's conclusions are directly refuted by Mr. Carlysle" and suggests there was not enough rainfall for the wall to fail. (*Id.* at 13). Mr. Brown

_____

[7] Without citation to legal authority, Mr. Brown argues that State Farm can rely only on the water and defective construction exclusions because they were cited in the denial letter. (*See* Doc. 48 at 10). However, this is incorrect. In Alabama, "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Home Indem. Co. v. Reed Equipment Co., Inc.*, 381 So. 2d 45, 51 (Ala. 1980) (citing *Aetna Ins. Co. v. Pete Wilson Roofing & Heat. Co., Inc.*, 289 Ala. 719, 272 So.2d 232 (1972)) (emphasis added).

points to evidence indicating that the wall was in good condition,[8] and witnesses who are able to testify to what they observed at the home. (*See id.* at 13-14). Mr. Carlysle, Mr. Brown's expert, indicates that it is highly unlikely that hydrostatic pressure could have collapsed without some prior distress in the wall. (*See id.* at 14); (*see also* Carlysle Depo. at 95: 3-11).

At summary judgment, this Court must take the evidence in the light most favorable to the plaintiff. Here, Mr. Brown claims that he never said that one inch of water covered his basement floor:

A.    The following week after the original date is when I found the water spots.

Q.    Okay. You described those as water spots?

A.    Yes.

Q.    I think that is different than standing water, like an inch of standing water.

[8] Mr. Brown also argues that "State Farm is legally or equitably estopped from relying" on the defective construction exclusion. (Doc. 48 at 19) (emphasis and capitalization omitted). Mr. Brown argues that State Farm is trying to impose today's building codes on homes built many years ago and that State Farm could have determined whether the home was defective before the loss. (*See id.* at 20-21). However, as State Farm notes, Mr. Brown's only legal citation for this argument is a general citation to *Slade* without a pincite. (*See* Doc. 49 at 12); (Doc. 48 at 22) (citing *Slade*, 747 So. 2d 293). This is insufficient to raise an argument asking the Court to disregard this exclusion. Mr. Brown cites no legal authority for the proposition that just because a home is built in compliance with building codes it is not defective or that State Farm is required to inspect an insured's home or waive its the defective construction exclusion. Finally, this exclusion (or one very similar to it) was used in *Nix*. *See Nix*, 444 F. App'x at 390. Accordingly, this argument fails.

A.	Well, spot. I'm saying spot like that area.

Q.	There were some spots. Do you have an estimate as to the depth of the amount of water that you saw in those water spots?

A.	No. The only thing that I could think was I was -- when Cain was questioning me about it was I said well, all I know is that the paneling is like an inch-and-a-quarter thick, and the water seeped up. And that was the only conversation we ever had about the amount. I don't recall ever saying that there was an inch of water in my basement.

Q.	Okay. Okay.

A.	This area (indicating) of the spots is what I was referring to.

Q.	Okay. So, for my knowledge, there was no standing water in your basement?

A.	No.

(John Brown Depo. at 266-67). State Farm counters by arguing that Mr. Cain's opinion is "based on . . . far more than his conversation with Mr. Brown." (*See* Doc. 49 at 11). While there is more to Mr. Cain's report than the alleged conversation between him and Mr. Brown, the alleged one inch of water comment is a keystone of the report. (*See* Doc. 32-4 at 22) ("The fact that Mr. Brown stated that there was approximately one (1) inch of water on the basement floor during the storm indicates that the soil outside the wall was saturated. Engineering calculations presented at the end of this report indicate that the saturated soil conditions produced a force of over 1,000 pounds per foot against the failed wall, which was obviously greater that [sic]

23

the strength of the wall to resist those forces."); (*see id.* at 23) (accepting Mr. Brown's statement that there was one inch of water in the basement to conclude that more rain fell in Leeds (where the home is located) than in Birmingham (where the weather station is located); (*see id.* at 36) (noting that the calculations in the report are based on "heavy rainfall in Leeds"); (*see id.* at 41) (calculating the earth pressure based on the assumption of the soil being saturated with water); (*see id.* at 45) ("Apparently the rainfall amount at this location in Leeds was, more likely than not, much higher than Birmingham reported because Mr. Brown stated that the rainfall was heavy.").

It is important to remember that " to succeed on its motion, [State Farm] must demonstrate that there is no genuine issue of material fact as to whether the . . . exclusion applies and that it is entitled to judgment as a matter of law." *Smith Lake Marina & Resort LLC*, 2017 WL 4167448 at *2. Here, Mr. Brown can testify that he never said there was standing water in the basement, and so Mr. Cain's opinion is suspect. If Mr. Cain's report is based on a statement that was never uttered, then a jury could find that Mr. Cain's report is not worth the paper it is written on. Further, Mr. Brown's expert, Mr. Carlysle, casts significant doubt on Mr. Cain's report. (*See* Doc. 32-10 at 84-85) (discussing the problems with Mr. Cain's opinion). Accordingly, State Farm is not entitled to summary judgment based on Mr. Cain's report.

## 2.   State Farm Cannot Prove the Earth Movement Exclusion at Summary Judgment[9]

State Farm argues that even under Mr. Brown's own expert, Mr. Carlysle, the loss is not covered under the policy. (*See* Doc. 32 at 23). Mr. Carlysle's opinion is "that the sudden movement of the right foundation wall was caused by the seismic ground movement created by the pressure wave/thunder from the lightning strike approximately 17'6" from the right front corner of the house." (Doc. 32-11 at 6). In support, State Farm relies heavily on the *Slade* decision. (Doc. 32 at 24-26) (citing *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1993)).

The plaintiff's theory of recovery in *Slade* is similar to Mr. Carlysle's theory here:

> The Slades' second theory was that the lightning caused the soil movement that resulted in the cracking in their home. The Slades maintain that they presented reports from various engineers and soil experts indicating that the lightning did cause soil movement that resulted in the cracking in their home.

*Slade*, 747 So. 2d at 308. The Court looked to the language of the policy to determine

---

[9]  State Farm also argues that "Brown's opinion about the cause of the damage to [his] home is admissible lay testimony." (Doc. 32 at 22) (emphasis omitted). However, consistent with the Court's analysis above regarding admissibility of lay opinion testimony as to causation, Mr. Brown's testimony about the cause of the loss is excluded.

if the loss was covered. *See id.* at 310-11. The Court found the policy exclusion there to be broad enough to encompass a loss caused by the earth moving because of lightning:

> The language in the Slades' policy unambiguously excludes the Slades' loss. The earth-movement exclusion is not reasonably susceptible to two or more constructions. The language of the policy specifically states that a covered loss, such as a loss resulting from lightning, is excluded from coverage if the loss would not have occurred without earth movement. According to the policy, earth movement means the "shifting of ... earth." The Slades' second theory of liability under the contract is that lightning caused the soil to shift or settle and that the shifting or settling resulted in the cracking in their home. According to the unambiguous terms of the contract, the Slades could not use this theory as a basis for contractual liability.

*Id.* It appears that the policy provision in *Slade* is strikingly similar, or even the same, as the policy provision currently before this Court. The policy at issue excludes coverage for "earth movement." (Doc. 32-2 at 32). It states that earth movement is the "sinking, rising, shifting, <u>expanding or contracting of earth</u>, all whether combined with water or not." (*See id.*) (emphasis added). The policy clearly states that State Farm "[does] not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) <u>whether other causes acted concurrently or in any sequence with the excluded event to produce the loss</u>; or (d) <u>whether the event occurs suddenly</u> or gradually, involves isolated or widespread damage, <u>arises from natural or external forces</u>." (*Id.*) (emphasis added).

Mr. Brown's response on this point does not address *Slade*. (*See* Doc. 48 at 25). Mr. Brown argues that the Court should not "pare down and dissect the movements that occur instantaneously within a single jagged lightning bolt" because that is not what the policy necessitates. (*See id.*). He argues that it would be an "unreasonably broad interpretation of [the] policy." (*See id.*). State Farm notes that Mr. Brown alludes to the dispute between himself and his expert over how exactly the lightning caused the home damage. (*See* Doc. 49 at 4 n. 2) (citing Doc. 48 at 18).

Ultimately, the Court does not have to reach the question of whether Mr. Carlysle's theory excludes coverage under the policy because a jury does not have to accept Mr. Carlysle's opinion. State Farm proffered an expert who put holes in Mr. Carlysle's theory. (*See* Doc. 32-4 at 43-59) (discussing the problems with Mr. Carlysle's opinion). State Farm then claims that it wins under Mr. Carlysle's theory. However, the jury may well believe Mr. Cain when he says that Mr. Carlysle's theory is not credible. Accordingly, State Farm is not entitled to summary judgment based on Mr. Carlysle's report.

The Court recognizes that this is an unusual case. However, there is a narrow path where, if a jury does not accept either Mr. Cain's or Mr. Carlysle's testimony, then State Farm will not have met its burden to prove the applicability of any exclusion. The Policy grants coverage for a loss until State Farm proves the

applicability of an exclusion. If a jury does not accept either expert opinion, accepting only the portions of each report that discredits the other, then State Farm will not have proven its affirmative defense. "A jury is not required to accept 'all or none' of a witness's testimony; rather, a jury may accept those portions of a witness's testimony which it considers credible and reject other portions which it finds to be improbable." *Rixey v. West Paces Ferry Hosp., Inc.*, 916 F.2d 608, 616 (11th Cir. 1990) (citing Pattern Jury Instructions (Civil Cases), Eleventh Circuit, Basic Instruction No. 3–Credibility of Witnesses (1990 ed.)).

This result is possible because of the wording of State Farm's policy. While Coverage B for personal property enumerates certain perils that an insured would necessarily have to show occurred to be within the policy, Coverage A for the dwelling covers all "accidental direct physical loss to the property" <u>unless</u> there is an exclusion. (Doc. 32-2 at 29). State Farm has to prove the applicability of its exclusion. A jury must decide whether to believe either of the experts, and to what extent.

### 3.     Mold Damage Is Excluded Under the Policy

Next, State Farm argues that "any mold damage resulting from water damage in Mr. Brown's basement is specifically excluded under the policy." (Doc. 32 at 26-28) (emphasis and capitalization omitted). In response, Mr. Brown argues that "[t]he mold damage was a foreseeable result of the lightning strike . . . and the resulting

collapse of the foundation wall." (Doc. 48 at 26). Further, Mr. Brown argues that:

> The water damage to [his] basement floor was directly caused by the lightning strike, a covered peril. The policy does not exclude coverage for remediation or repair for damages caused by mold if that damage resulted from a covered peril. (Doc. 32-5 p. 16-62).

(*Id.* at 27). Mr. Brown again cites no authority supporting his position, but merely distinguishes the two cases State Farm relies on. (Doc. 48at 26-27). The Court need not reach the applicability of those two cases because here the policy terms are unambiguous.

The policy defines "fungus" as "mold." (Doc. 32-2 at 6). The policy clearly excludes fungus. (Doc. 32-2 at 9-10, 32) ("We also do not cover . . . any remediation of fungus.") (emphasis omitted). This is so "regardless of . . . the cause of the excluded event . . . other causes of the loss . . . whether other causes acted concurrently or in any sequence with the excluded event . . . [and] whether the event occurs suddenly or gradually." (Doc. 32-2 at 32). Mr. Brown argues that "[i]t was reasonably foreseeable that [he] would suffer mold damage unless State Farm timely performed under the contract." (Doc. 48 at 27). However, mold is excluded under the policy. Accordingly, Mr. Brown's claim for mold damage fails.

### 4.     Mr. Brown Can Recover Mental Anguish Damages

Finally, State Farm argues that Mr. Brown cannot recover any damages for mental anguish under the breach of contract claim because "the alleged breach . . . did

29

not involve a contract for repair or construction, and any alleged breach did not 'affect the habitability' of Mr. Brown's home." (*See* Doc. 32 at 28). State Farm notes that "Mr. Brown continues to live in the home even today, and even continues to invite others to his home." (*See id.* at 29). Mr. Brown responds by arguing that the case law does support such damages and that he has suffered mental anguish from the loss. (*See* Doc. 48 at 27-30).

> In Alabama, "[i]t is settled that the law in this state does not permit recovery for personal injury, inconvenience, annoyance or mental anguish and suffering in an action for breach of a contract of insurance." *Vincent v. Blue Cross–Blue Shield, Inc.*, 373 So.2d 1054, 1056 (Ala.1979). Alabama does, however, recognize a limited exception to this rule. Under Alabama law, "[d]amages for mental anguish can be recovered ... where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Liberty Homes, Inc. v. Epperson*, 581 So.2d 449, 454 (Ala.1991) (quoting *F. Becker Asphaltum Roofing Co. v. Murphy*, 224 Ala. 655, 141 So. 630, 631 (1932)). . . .

> . . . The majority of the cases in which a plaintiff has been allowed to recover damages for mental anguish involved actions on "contracts for the repair or construction of a house or dwelling or the delivery of utilities thereto, where the breach affected habitability." *See, e.g.*, *Epperson*, 581 So.2d at 454; *Orkin Exterminating Co. v. Donavan*, 519 So.2d 1330 (Ala.1988); *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297 (Ala.1986); *Alabama Power Co. v. Harmon*, 483 So.2d 386 (Ala.1986). Because a person's home is said to be his "castle" and the "largest single individual investment the average American family will make," these contracts are "so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *B & M Homes, Inc. v. Hogan*, 376 So.2d 667,

671–72 (Ala.1979). Where such a contractual duty breached, the Alabama Supreme Court has said that "it is just that damages therefor be taken into consideration and awarded." *Id.* at 671.

*Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1359 (11th Cir. 2000). "[I]t is highly foreseeable that egregious breaches of certain contracts—involving one's home . . . for example—will result in significant emotional distress." *Id.* at 1359-60 (citing *Sexton v. St. Clair Federal Sav. Bank*, 653 So.2d 959, 962 (Ala.1995)). "The contractual duties imposed by these contracts are so sensitive that a breach will necessarily and foreseeably result in mental anguish." *Id.* at 1360 (citing *Orkin Exterminating*, 519 So.2d at 1333).

State Farm relies on a case from the Court of Civil Appeals of Alabama that states that there are "three elements that are essential to the right to recover mental-anguish damages for the breach of a home-construction contract, namely: (1) that the breach be egregious, i.e., that it result in *severe* construction defects; (2) that those defects render the home virtually uninhabitable; and (3) that the breach *necessarily or reasonably* result in mental anguish or suffering." *Baldwin v. Panetta*, 4 So.3d 555, 567-68 (Ala. Civ. App. 2008) (citing sources); (*See* Doc. 49 at 14).[10]

---

[10] In *Christian*, the court noted that "[t]he Alabama Supreme Court has never required that the breach render the house uninhabitable." *Christian v. Country Mut. Ins. Co.*, No. 7:13-CV-0027-LSC, 2014 WL 2434294, *5 (N.D. Ala. May 29, 2014). In *Independent Fire*, the Supreme Court of Alabama stated:

According to *Orkin Exterminating Co. v. Donavan*, 519 So.2d 1330

First, *Baldwin* was about a breach of a construction contract. *See Baldwin*, 4 So.3d at 557. Second, the facts of *Baldwin* indicate that "most of the construction defects about which the owners complained were aesthetic." *Id.* at 568. Here, a collapsed basement wall which allows water to enter is a serious problem. State Farm points out that "Mr. Brown continues to live in the home even today, and even continues to invite others to his home." (Doc. 32 at 29). However, even if the whole house is habitable, a portion

---

(Ala.1988), citing *B & M Homes, Inc. v. Hogan*, 376 So.2d 667 (Ala.1979), a plaintiff may recover damages for mental anguish if the jury is satisfied "that the contractual duties imposed by this contract are so coupled with matters of mental solicitude as to the duty that is owed, that a breach of that duty will necessarily or reasonably result in mental anguish." The Lunsfords maintained the insurance policy for more than four years by paying the premiums when due. After discovering the damage to the awning, they properly notified the Elmer Tallant Agency, which then notified Independent. After an inspection of the damaged awning, an Independent agent notified the Lunsfords that the claim would be denied.

Mr. Lunsford testified at trial concerning the mental anguish he and his wife claimed to have suffered as a result of the denial of their insurance claim. That evidence presented a question for the jury.

We agree with the trial court that the evidence supported the jury's award of compensatory damages for breach of contract, including damages for mental anguish.

*Independent Fire Ins. Co. v. Lunsford*, 621 So.2d 977, 979 (Ala. 1993) (emphasis added). This Court notes that the home in *Independent Fire* was not even a primary home, and as Judge Coogler noted in *Christian*, there is no indication it was not habitable (the awning was damaged). *See Independent Fire Ins. Co.*, 621 So.2d at 978; *see also Christian*, 2014 WL 2434294 at *5. This case is even stronger because this is Mr. Brown's primary home, the damage is more significant, and he cannot use part of his home.

of it is not.[11] It takes no stretch of the imagination for the Court to conclude that such damage to the basement could reasonably cause mental anguish.

Accordingly, if Mr. Brown is able to convince a jury that State Farm breached the insurance contract, he will be permitted to request mental anguish damages.

## V.   CONCLUSION

State Farm is trying to have it both ways. State Farm puts up one expert and claims that he proves two exclusions apply. Then State Farm takes Mr. Brown's expert and claims that a third exclusion applies. However, the first expert disputes the credibility of the second and vice versa. This is not to mention that State Farm's expert's opinion relies on a comment that may or may not have been said. To grant summary judgment to State Farm would require the Court to pick and choose which expert to believe when there are good reasons to discredit either, and maybe even both. These questions are best left to a jury that can weigh the evidence and find the facts. Should the evidence presented at trial change, then a directed verdict may be appropriate. *See* FED. R. CIV. P. 50(a). Until that time, summary judgment is inappropriate.

---

[11]   "John is home most of the day and he enjoyed his downstairs -- let's just call it a man cave. I would come in, he would be downstairs watching a movie or watching TV, and it just gives him a little extra thing to do during the day. That has now been taken away." (Virginia Brown Depo. at 94) (emphasis added). Apparently, the Browns had to move furniture from the basement, leaving their main floor a mess. (*See id.* at 94-95).

Accordingly, the Motion to Strike is **GRANTED** and **DENIED** as set out herein. Finally, State Farm's Motion for Summary Judgment is **GRANTED** in part and otherwise **DENIED**. The breach of contract claim will go to trial, where Mr. Brown will be permitted to seek mental anguish damages. The Court will issue an order setting this case for a final pretrial conference.

**DONE** and **ORDERED** this the 25th day of July, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge